Ex parte WOODY VANDERBURG.

No. A-10044.   Sept. 17, 1941.

(117 P. 2d 550.)

Looney, Watts & Fenton, of Oklahoma City, for petitioner.

Mac Q. Williamson, Atty. Gen., and Sam H. Lattimore, Asst. Atty. Gen., for respondent.

JONES, J. This is an original proceeding in habeas corpus, wherein the petitioner, Woody Vanderburg, seeks his release from imprisonment in the State Penitentiary.

The verified petition filed herein alleges in substance that the petitioner has been committed to the State Penitentiary by reason of a certain judgment and sentence pronounced by the district court of Oklahoma county, in case No. 13136. That said restraint is illegal, and petitioner's conviction was procured without due process of law by reason of the following facts:

That the petitioner was charged on April 27, 1939, with the offense of burglary in the second degree, after a former conviction of felony; that the case was set for trial on May 10, 1939, at which time the petitioner's attorney, Wayne E. Wheeling, was ill, which fact was properly brought to the attention of the trial judge by written certificate; that the petitioner stated in open court that one Glen Morris was his attorney; that the said Glen Morris was present in the courtroom, denied being the defendant's attorney, and refused to aid and assist in his defense; that petitioner was then without proper counsel or representation, and the court did not appoint counsel to aid petitioner in his defense, and did not grant petitioner a continuance as requested by him; that the court ordered the case to trial and proceeded to select a jury for that purpose; that the petitioner thereupon, at the suggestion of certain bystanders, and without the benefit of counsel, and being ignorant of his rights, withdrew his former plea of not guilty and entered a plea of guilty to the charges alleged in the indictment.

That thereafter, and before being sentenced by the court on the 19th of May, 1939, application was made for leave to withdraw said plea of guilty, which was by the court denied, and the petitioner was thereupon sentenced to serve a term of 15 years in the State Penitentiary at McAlester, and was subsequently delivered to the warden pursuant to said commitment.

The rule to show cause was issued, and a response filed by the warden of the State Penitentiary, in which he attaches a photostatic copy of the judgment and sentence pronounced against the petitioner.

The response further alleges that after the petitioner entered his plea of guilty on May 10, 1939, that sentence was set for May 19, 1939, at which time the petitioner was duly represented by counsel, and presented his motion for leave to withdraw his plea of guilty, and introduced evidence in support of such motion; that after a hearing before the court on said motion, the motion was overruled, and petitioner was sentenced; that the petitioner, through his counsel, at that time gave notice of his intention to appeal to the Criminal Court of Appeals, and was given an extension of time to make and serve case-made; that thereafter petitioner filed his motion for a new trial in said cause, which was heard and overruled, and that petitioner again procured an order granting time to make and serve case-made; that thereafter several orders extending the time to make and serve case-made were filed, but no appeal was ever perfected; that petitioner's proper remedy was by appeal, and having abandoned his appeal, he is not entitled to substitute therefor this application for habeas corpus.

The response further states that the said Woody Vanderburg is not inexperienced in court and unfamiliar with his legal rights, but alleges that he has been arrested

nearly 40 times for past offenses in various counties of Oklahoma and in Wichita Falls, Tex.; that he has served time for convictions obtained upon felony charges at least three times in the Oklahoma state prison.

Upon the issues thus being joined, a hearing was had before this court. In addition to the oral evidence introduced upon said hearing, a transcript of the proceedings had before the Honorable Clarence Mills, district judge of Oklahoma county, in connection with the plea of guilty, was introduced in evidence.

The evidence shows that the petitioner is a young man, about 25 years of age, who has been having trouble with the officers for the past ten years, it being shown that he has been arrested for various felonies and misdemeanors approximately 40 times since 1931. Included in the list are convictions for many misdemeanors; and his record further shows four felony convictions for forgery, robbery, and burglary.

The transcript of the record taken at the hearing before the district court shows that a motion to withdraw the plea of guilty entered by the petitioner on May 10, 1939, was filed and a hearing had upon said motion on May 19, 1939, before sentence was passed.

After the court had heard the evidence, the application was denied and sentence was pronounced against the petitioner. Notice of appeal was given, but no appeal from the action of the court was ever lodged in this court.

The record shows that the petitioner had the aid and assistance of able counsel when the application to withdraw the plea of guilty was presented, and a record was made which properly raised the questions for review in this court; but no appeal was taken.

The question as to whether the trial court abused its discretion in refusing to allow a defendant to withdraw a plea of guilty is properly a matter which should be brought to this court by appeal. It is well settled that the writ of habeas corpus may not be used as a substitute for an appeal. Ex parte Tollison, 73 Okla. Cr. 38, 117 P. 2d 549; Ex parte Thomas, 56 Okla. Cr. 258, 37 P. 2d 829; Ex parte Barnette, 29 Okla. Cr. 80, 232 P. 456.

In addition to this, however, the record does not show that the petitioner has been committed without due process of law. When the case was called for trial, the petitioner announced that his attorney was Glen O. Morris. Mr. Morris, being present in the courtroom, advised the court that he had discussed the matter with the petitioner and was prepared to represent him, but that final arrangements had not been made for the payment of his fee, and that he did not wish to go to trial until his fee was paid, and asked the court to continue the case for one week. This application for a continuance was denied by the court, who stated:

"Let the record show Case No. 13136, State v. Woody Vandenburg was regularly set for trial at 9 o'clock this date, he being charged with burglary after conviction, the State appears by Assistant County Attorney, Walter Marlin, and Wayne Wheeling is noted on the trial docket as attorney for the defendant. Attorney Bob Howe appears and files in the case a statement from one W. D. Baird, a doctor, which is ordered filed.

"The defendant Vandenburg in open court states that his attorney is Glen Morris and not Mr. Wayne Wheeling. Mr. Morris asks for a continuance. The Court announces that the case is regularly set for trial and will be continued unless by agreement of the attorneys, or upon making the proper statutory showing. The State announces ready for trial, and the Court orders the clerk to call a jury."

After the court made the above remark, Mr. Morris had himself sworn as a witness and dictated a long statement into the record concerning his connection with the case, and ended his statement with the assertion that if the case could be continued for a short time that, "A plea will be entered that will satisfy the defendant and satisfy the officers and the state."

After considerable colloquy between Mr. Morris and the court, during which the petitioner was sworn and questioned by Mr. Morris as to what arrangement he had made to pay Mr. Morris a fee, the court again stated that the proposition presented by counsel was not sufficient to make a statutory showing, entitling the petitioner to a continuance, and that he was going to try the case if the county attorney insisted. The county attorney insisted upon a trial, and the court again directed the clerk to call a jury, at which time the following occurred:

"Mr. Vandenburg: Your honor, I think we can get something worked out here so we won't have a trial. I have tried to make some arrangements, but have not completed them. If the court forces me I will have to plead guilty. The Court: I am not going to force you to do anything except talk to these 12 men we are going to call in the box. That is the only thing you are going to have to do. I mean by that, you or your witnesses. I don't care whether you take the stand or not. The case is going to go to trial this morning. Mr. Vandenburg: We are trying to work out some kind of an arrangement over here. The attorney has almost agreed. I know I am trying to make some arrangements. I want to enter a plea of guilty now."

After the petitioner had entered his plea of guilty, the court asked him considerable questions about the alleged offense and his prior convictions. The petitioner admitted breaking and entering the building in question, with the intent to steal some merchandise contained there-

in, and told the court about his former convictions for felonies. Some of the questions and answers are as follows:

"Q. Did you break into the building? A. Yes, sir. Q. What did you intend to do after you broke in? A. I was arrested soon afterwards in my automobile. Q. What did you break in there for? What were you going to do after you broke in there? A. I intended to take some merchandise from the store."

After the court had finished the questioning of the petitioner, the following occurred:

"The Court: Is there anything you want to ask him, Mr. Morris? Mr. Morris: No; I don't consider I am representing the boy at this hearing. The Court: You may not consider it that, but the record pretty well shows you have been."

After the above statements, the court questioned the petitioner further concerning his prior convictions, and the following questions were asked:

"Q. (By the Court) You want to go on with Mr. Morris after this? A. I don't know. I absolutely don't know. Q. That is up to you entirely. That is your business. I haven't got anything to do with that. I just want to know, because I am going to set this over so you can have a little time to make what arrangements you can and see whether the thing can be worked out or not, and I will give you a little time. I am not going to crowd you into that. If you want to go on with him, that is all right. A. Yes, sir; I do. Thank you. Q. All we want you to do is just be fair with us and we will be fair with you. We will go more than halfway with you if you just show a proper disposition. I will set this over until 9 o'clock a. m. May 19. That is 12 days. No; that is 9 days. Mr. Marlin: Does the record show that he entered a plea of guilty? The Court: Yes. Q. (By the Court) If it does not, that is a fact isn't it? A. Yes, sir. Q. You told me you were guilty of the entrance charge there? A. Yes."

We think the above excerpts taken from the record are sufficient to show that this petitioner and his counsel never at any time contemplated doing other than entering his plea of guilty to the charge which was filed against him. His only interest apparently being in the hope that he might, with the assistance of counsel, be able to bargain with the county attorney and secure the filing of an amended information charging the offense of second degree burglary and omitting any reference to a former conviction. In such case, the maximum penalty would have been seven years in the State Penitentiary. In fact, it was stated in the hearing before the district court upon the application to withdraw the plea of guilty that petitioner was trying to raise $200 to pay his counsel in the hope that his counsel, through the assistance of certain police officers, could induce the prosecution to reduce the charge to a plain burglary charge.

In considering the background of the petitioner, his past experience and conduct with the officers, it is apparent that instead of being inexperienced, as alleged in his petition, that he was fully acquainted with all of the things that were transpiring in the courtroom. It can hardly be said that a person who has been haled before the courts of this land 40 times for violations of the law is inexperienced in court matters and ignorant of his rights. The petitioner's questions addressed to the trial court and answers he made to questions directed to him by the court convince us that he thoroughly knew his legal rights in connection with the prosecution against him.

In the case of Ex parte Grant, 32 Okla. Cr. 217, 240 P. 759, 760, in speaking of the writ of habeas corpus, this court said:

"Its scope, when directed to an inquiry into the cause of imprisonment in judicial proceedings, extends to questions affecting the jurisdiction of the court and the sufficiency in point of law of the proceedings. Mere errors or irregularities in a judgment or proceeding of a court under and by virtue of which a person is imprisoned, which are not of such a character as to render the proceedings void, cannot be reviewed on an application for a writ of habeas corpus. Where a prisoner in custody under sentence of conviction seeks to be discharged on habeas corpus, the inquiry is limited to the questions whether the court in which the prisoner was convicted had jurisdiction of the person of the defendant and of the crime charged, and did the court have jurisdiction to render the particular judgment."

In Ex parte Owens, 37 Okla. Cr. 118, 258 P. 758, 760, this court held:

"When a person is held in custody under a void order of commitment, or is imprisoned without due process of law under the sentence of any court of the state, it is not only within the authority of this court, but it is its duty upon habeas corpus to inquire into the illegality of the commitment when the matter is properly brought before it by petition, and if it be adjudged that the order of commitment was made without authority of law, the person will be entitled to a discharge from custody in order to preserve the constitutional right of all persons not to be deprived of liberty without due process of law."

If we were to attempt in this proceeding to pass upon all of the questions raised by counsel, it would be an innovation in criminal procedure and would simply mean an end to appeals being taken from convictions for crime, and henceforth prisoners would seek their release from imprisonment by an original proceeding in habeas corpus filed in this court. Under the uniform decisions of this court, the only question we may determine in this proceeding is whether the trial court lost jurisdiction to pronounce judgment against the petitioner upon his plea

of guilty, for the reason that the petitioner in the proceedings in the lower court was denied his right to counsel.

Under the record as we view it, this contention must be held against the petitioner. The trial court took the view that petitioner had counsel in the proceedings before him, evidently forming this opinion upon the statements made by petitioner and Mr. Morris during said proceedings. It is true that an accused is entitled to the assistance of counsel in his defense; and if he is unable to employ counsel, the court should assign counsel to represent him.

It is apparent from the record that the petitioner and Mr. Morris had many whispered consultations during the proceedings leading up to the plea of guilty by the petitioner, and we are firmly convinced that, although Mr. Morris stated that he had not received his fee and accordingly the contract of employment was not completed, he had advised with the petitioner concerning the possible and probable consequences of a trial to á jury and of a plea of guilty made to the court.

The other questions, as to whether the court abused its discretion in refusing the petitioner the right to withdraw his plea of guilty and of the excessiveness of the punishment, cannot be determined in habeas corpus proceeding, but should have been raised by an appeal, taken in the proper manner and in the time allowed by law.

For the reasons hereinabove stated, the application for a writ of habeas corpus is denied.

BAREFOOT, P. J., and DOYLE, J., concur.