# Ex parte WALTERS.

No. A-11407.   June 28, 1950.

(221 P. 2d 659.)

2

S. E. McDonald, of Oklahoma City, for petitioner.

Mac Q. Williamson, Atty. Gen., and Claude E. Love, Oklahoma City, for Division of Child Welfare, Department of Public Welfare, State of Oklahoma, for respondent.

POWELL, J. Petition for writ of habeas corpus was on April 20, 1950, filed in this court by Mollie Walters, mother of Serena Avon Walters, age nine years seeking her release from the Child Welfare Division of the Oklahoma Department of Public Welfare, to which organization said child was committed by reason of an order issued by the county court of Stephens county in case No. D-6, dated August 23, 1949.

In this court hearing on the rule to show cause was had on April 26, 1950, and the parties were granted further time to file briefs. Respondent's brief was filed May 25, 1950, and petitioner's brief was filed May 27, 1950. Application by respondent for further oral argument was granted, and this court had the benefit of further argument by counsel for the parties on June 21, 1950.

Although petitioner was served with process, was present in court and the minor was represented by counsel in the county court of Stephens county, and although motion for new trial was duly filed, after the court found the minor a dependent neglected and delinquent child and decreed her custody in respondent, and although notice was given in open court of intention to appeal to the Supreme Court of Oklahoma, and time was given by the trial court for perfection of appeal, the appeal was abandoned. Thereafter, application of Serena Avon Walters, by her mother Mollie Walters, for writ of habeas corpus was filed in the district court of Stephens county, case No. 15203, and after hearing, the court on March 15, 1950, entered judgment denying said writ.

Under the above facts, this court is limited in its inquiry; that is, the writ of habeas corpus may not be used as a substitute for an appeal, Ex parte Vandenburg, 73 Okla. Cr. 21, 117 P. 2d 550, and the scope of review is limited to an examination of the jurisdiction of the court whose judgment of conviction is challenged. Ex parte Robnett, 69 Okla. Cr. 235, 101 P. 2d 645; Ex parte Maynard, 79 Okla. Cr. 215, 153 P. 2d 505. And burden is on petitioner to establish allegations of petition. Ex parte Bostick, 90 Okla. Cr. 133, 211 P. 2d 290.

In the petition for writ, it is alleged:

"That the cause of the restraint according to the best of the knowledge and belief of your petitioner is: an order from the Juvenile Court of Stephens County, Oklahoma.

"But your petitioner alleges that such restraint is unlawful, illegal and unauthorized in that the court did not have jurisdiction of both parties at the trial. That the court was without authority to issue the sentence it did issue. That your petitioner's constitutional rights has been denied her.

"That your petitioner applied to the Honorable District Court for a writ of habeas corpus which was denied said petitioner.

"Wherefore, petitioner prays your honorable court to grant a writ of habeas corpus, and that she be discharged without delay from such unlawful imprisonment.

"Mollie Walters."

In petitioner's original brief a good portion of it is devoted to alleged irregularities in hearing on application for writ of habeas corpus in the district court of Stephens county. The transcript of excerpts of testimony of witnesses given in that court and attached to the petition for writ, will be considered as a deposition in orig-

inal action in this court, and not as on appeal, and alleged irregularities in hearing before that court will not here be considered. For sake of brevity, for the reason for this rule, we refer to Ex parte Peaker, 87 Okla. Cr. 139, 194 P. 2d 893.

In supplemental brief, counsel for petitioner says:

"Our question here involves only one question: 'Does the juvenile court have authority to permanently take a child away from its parents and adopt it out without the parents' consent?'"

The petitioner did not introduce in evidence in this court a copy of the order complained of and entered in the county court, or a transcript of the pleadings therein, but respondent did submit such transcript, duly certified to by the court clerk of Stephens county, so that the instruments necessarily to be considered are by such fact before the court. The order complained of, omitting heading, reads:

"This cause coming on for hearing on this 23rd day of August, 1949, upon the verified petition of Freda Mullins filed herein on the 18th day of August, 1949, declaring that Serena Avon Walters is a dependent, neglected and delinquent child. Proper notice as required by law was given to the mother, Mrs. Mollie Opal Walters being present in court and to the father Loyd C. Walters, also present in court. The court having heard the testimony and being advised in the premises, finds that the mother and father of said child are unable to provide a suitable home for said child.

"The court finds that Serena Avon Walters is a dependent, neglected and delinquent child (within the meaning of Title 10, O.S.A. Section 101) by reason of improper care and by reason of the facts that the said parents have not provided a suitable home for said child and are unable to provide a suitable home.

"It is therefore ordered, adjudged and decreed by the court that said Serena Avon Walters be and is hereby adjudged to be a dependent, neglected and delinquent child within the meaning of Title 10, O.S.A. Section 101. It is the further order of the court that the Mother, Mrs. Mollie Opal Walters and the father, Loyd C. Walters, of Altus, Oklahoma, are hereby deprived of the care and custody of said child.

"It is further ordered by this court that said Serena Avon Walters be hereby committed to the permanent care and custody of the Child Welfare Division of the Oklahoma Department of Public Welfare with power to consent to the adoption of said child.

"Witness my hand and the seal of the county court on this day of August, 1949.

"Elvie L. Sewell, County Judge."

Respondent, Division of Child Welfare, Department of Public Welfare, State of Oklahoma, and Connie Segars, in brief, pose this question:

"Is it cruel, inhuman or unusual for a county and district Judge, elected by the majority of the people of an Oklahoma County, to find parents unfit when the father has deserted a previous wife and seven (7) children for a second wife, the mother of the child in question; when the father was charged with violation of the Federal Mann Act; seduced and impregnated the second wife—mother of this child, while yet married to the first wife; was incarcerated in the Central State Hospital at Norman, escaped from the mental hospital and has not returned to this day; claims to be physcially disabled; follows a course of begging on the streets and mendicancy; uses the child here involved to do his begging; is dependent upon the support of the State through means of Aid to Dependent Children; follows a nomadic life in the course of his begging; and raises the child in filth and squalor?"

Such question is precluded here. We do not have before us the record of the evidence on which the judg-

ment was based. This not being an appeal from the judgment and order rendered, as heretofore indicated, we repeat the inquiry is strictly limited to the question of the jurisdiction of the court rendering the judgment complained of and set out above. We must assume, in the absence of evidence, that there was absolutely no evidence introduced to support the findings of the court as to delinquency as well as dependency, that there was evidence to support the judgment rendered.

The statutory provisions involved may be found in Tit. 10, O.S.A. §§ 101-114. The transcript of the instruments filed in Case No. D-6, In the Matter of the State in the Interest of Serena Avon Walters, submitted by respondent, are found to meet all statutory requirements. See Ex parte Lewis, 85 Okla. Cr. 322, 188 P. 2d 367, for a comprehensive discussion of the mechanics of handling a juvenile in the county courts of Oklahoma.

Having determined the regularity of the proceedings, we would next consider the form of the order entered. Petitioner complains of the wording: "* * * that said Serena Avon Walters be hereby committed to the *permanent* care and custody of the Child Welfare Division of Oklahoma Department of Public Welfare * * *." It is argued that the court could not commit her to the care of that agency past the age of majority, which for a girl is eighteen years of age, Ex pare Sweeden, 84 Okla. Cr. 127, 179 P. 2d 695. We do not conclude that the order so intended. The child in this case was determined by the court as to the crime alleged (taking the pocketbook and money, all of which was recovered), that she did not know the consequences of her acts. The order did not so say in so many words and is subject to criticism for this failure, but the conclusion reached presupposes, under the statute, such determination. Tit.

8

10 O.S.A. § 101. She was not, therefore, held to be charged with crime, and held to answer to a charge of larceny, but was found to be a dependent, neglected and delinquent child and placed with respondent. We would emphasize that she was of the tender age of nine years. The evidence in connection with this matter as introduced at the hearing in the county court may not be used against said child in different court proceedings involving her. Tit. 10, O.S.A. § 101. She is not to be treated as a criminal, Tit. 10, O.S.A. § 114; Ex parte Parnell, 19 Okla. Cr. 273, 200 P. 456; Ex parte Baeza, 85 Okla. Cr. 76, 185 P. 2d 242; Killian v. Burnham, 191 Okla. 248, 130 P. 2d 538; Wilson v. State, 65 Okla. Cr. 10, 82 P. 2d 308, and by reason of the action of the county court of Stephens county has not been so treated. See Ex parte Lewis, supra, and Ex parte Powell, 6 Okla. Cr. 495, 120 P. 1022. Therefore, the only reasonable meaning that can be given the word "permanent" in connection with the child's custody in the order complained of is exclusive custody; that is, from the date of the order the child is to remain with respondent to the end of the minority, unless the order is earlier modified or unless another contingency takes place, which we will take up hereinafter. This was not a sentence and the reasons for the rule in the case of Ex parte Custer, 88 Okla. Cr. 154, 200 P. 2d 781, are not here present, and that case does not here apply.

See Ex parte Birchfield, 90 Okla. Cr. 197, 212 P. 2d 145, 146, in which this court held:

"The juvenile act fixes the limits of the juvenile court's jurisdiction over boys at twenty-one years of age, and over girls at eighteen years of age, and an order of commitment to an institution for no definite time is not void for uncertainty, since by operation of law detention ceases within the limits provided in the act, unless soon-

er effected, by earlier reformation and by further order of the court."

Attention is called to the fact that in this case the child was not only found to be dependent and neglected, but delinquent.

Tit. 10 O.S.A. § 109, as amended Laws 1947, p. 39 § 1, reads:

"When any male child under the age of sixteen years and any female child under the age of eighteen years, shall be found to be dependent, or neglected, within the meaning of this article [§§ 101-114 this title], *the court may make an order committing the child to the care of a suitable orphan's home or to the care of some reputable citizen of good moral character,* or any State institution, department or agency authorized to provide protection or care for homeless dependent or neglected children, or to provide welfare service for such children, or to the care of some association willing to receive it, *embracing in its objects the purpose of caring for or obtaining homes for neglected or dependent children,* which association shall have been accredited as hereinafter provided. The court may, when health or condition of the child may require it, cause the child to be placed in a public hospital or institution for treatment or special care, or in a private hospital or institution which will receive it for like purpose without charge."

Tit. 10 O.S.A. § 111, as amended, Laws 1945, p. 26, reads:

"In the case of a delinquent child, the court may continue the hearing from time to time, said hearing may be private hearing in the discretion of the County Judge of the county, and commit the child to the care or custody of a probation officer, or any other person, or may allow said child to remain in its home, subject to the visitation of the probation officer, such child to report to the probation officer as often as may be required; or the court may cause the child to be placed in a suitable family home, subject to the friendly supervision of a probation

officer, and to the further order of the court; or it may authorize the child to be boarded out in some suitable family home in case provision is made by voluntary contribution or otherwise for the payment of the board of such child until a suitable provision may be made for the child in a home without such payment; or the court may commit the child, if a boy, to a training school for boys, or, if a girl, to an industrial school for girls; or the court may commit the child to any institution in the county incorporated under the laws of this State that may care for delinquent children or that may be provided by a city or county, suitable for the care of such children or to any state institution which may be established for the care of delinquent children; or the court may commit the child to the care and custody of some association that will receive it, embracing in its objects the care of neglected or dependent children, and that has been duly accredited as hereinafter provided. In no case shall a child * * * [omitted provisions by the 1945 amendment] be committed to an institution after such child has reached eighteen (18). A child committed to such an institution shall be subject to the control of the superintendent thereof, and the said superintendent shall have power to parole such children under such conditions as he may prescribe."

By the provisions of Section 114 of Title 10 O.S.A. sections 101-113 thereof are to be liberally construed. The section reads:

"This article shall be liberally construed, to the end that its purpose may be carried out, to-wit: That the care and custody and discipline of the child shall approximate, as nearly as may be, that which should be given by its parents, and that, as far as practicable, any delinquent child shall be treated, not as a criminal, but as misdirected and misguided, and needing aid and encouragement."

See, also, Tit. 12 O.S.A. § 2; Tit. 25 O.S.A. § 29, and In re Captain's Estate, 191 Okla. 463, 120 P. 2d 1002.

· Counsel for petitioner further argues that the order of the court is unconstitutional, for, said he:

"Art. 2, Const. § 9, provides: 'Excessive bail shall not be required, nor excessive fines imposed, nor cruel or unusual punishments inflicted.'" It is further argued that: "This is one of the most unusual punishments I have ever seen handed down. This child is forever forbidden to see her father and mother. The father and mother *is* forever barred from seeing their natural child. This is not only a violation of the laws of the State, but a violation of public policy."

Petitioner cites no further authority in support of this argument. Apparently counsel has not given careful consideration to the cases of Ex parte Lewis, supra, and Ex parte Powell, supra, as well as the other cases above cited, for there is no intention on the part of the state to punish a minor who is determined by the juvenile court to not understand the consequences of its acts. Only when the child is found by the juvenile court to know the consequences of its acts, may it be punished.

Concerning the punishment question, the cases of Hayes et al. v. United States, 10 Cir., 112 F. 2d 417, and Ex parte Meyers, 55 Okla. Cr. 75, 24 P. 2d 1011, and cases cited are interesting in dissolving the argument advanced by petitioner, but by reason of the nature of the hearing, and judgment complained of which does not attempt to inflict punishment, the constitutional provision cited is not involved.

At the risk of prolixity, but for emphasis, we would point out that the above quoted provisions of the statute, and as interpreted by Ex parte Lewis, supra, the following are the principal steps to be taken in determining whether or not the juvenile may be said to understand the consequences of its acts:

(1) There must be a county court hearing on the juvenile below the age of sixteen years for boys and eighteen years for girls.

(a) Service of summons must be had on the parents notifying them of this hearing.

(b) A jury may be demanded.

(c) At this hearing the county judge, where jury is waived, must determine whether or not child is dependent or delinquent, and if delinquent, must then determine whether this child knew the consequences of its wrongful acts.

(d) If it is found that the child did know the wrongfulness of its acts, such finding is included in his order, and then

(2) The county attorney in his discretion may or may not institute a prosecution by filing a complaint before a magistrate.

(a) At this hearing, if the county attorney decides to file a complaint, the magistrate must determine whether a crime was committed and whether there was probable cause that accused committed it.

(3) If the minor is ordered held to await trial in district court, he is there tried as an adult.

Article VII, § 13, Okla. Const., provides:

"The County Court shall have the general jurisdiction of a Probate Court. It shall probate wills, * * * transact all business appertaining to the estates of deceased persons, minors idiots, lunatics, persons non compos mentis, and common drunkards, including the sale, settlement, partition, and distribution of the estates thereof."

Tit. 10 O.S.A. §§ 101-114, were adopted by the Legislature in 1909, but have been amended in several respects from time to time.

The act in question, prior to amendment, was in January, 1912, held by this court to be constitutional in the case of Ex parte Powell, supra. Thus it will be found that this court has for some 40 years been committed to the thesis that the state has a paramount interest in the child. And why should this not be? Is it not for the common good? Aristotle, the Greek Philosopher, hundreds of years prior to the modern dictators who for selfish, sinister ends, though proclaimed for the common good, have made such effective use of the idea, said: "All who have meditated on the act of governing mankind have been convinced that the fate of empires depends on the education of youth."

We believe a portion of the reasoning in Ex parte Powell, supra, so fundamental and necessary of consideration for a satisfactory solution of the within case, that we shall quote a portion thereof. Said the court, through Armstrong, J., in the body of the opinion:

"It is next urged that the Legislature had no right, under the Constitution, to enact the law in question. We are of the opinion that the Legislature did have the right to enact the law. It is a fact, well known to all members of the legal profession, and a great number of our citizenship, that all laws relating to the commitment of minors to various institutions, whether for care and guardianship, or for purposes of restraint and reform, are entirely statutory, and have been uniformly upheld. Such provisions found no lodgment in the common law, as is the case with most of our criminal statutes. But the legal principle involved in the construction and application of those statutes authorizing such commitments are founded on the common-law doctrine generally. * * *

"The object of the detention in these cases is not punishment, but reform and moral training, as is the purpose of the statute before us; and proceedings under statutes authorizing such commitment have been held to be valid, *on the ground that the parens patriae, or sovereign right to care for the education of its members, belongs of strict right to the state, under whose sanction the custody or charge of the minor is thus transferred from the guardian, who declares his inability to fulfill the purposes of guardianship.* See Roth v. House of Refuge, 31 Md. 329; Ex parte Crouse, 4 Whart., Pa., 9.

"It is no light matter to compel a boy or girl to spend his or her childhood days in restraint; and there should be clear proof of the necessity of such a course before a child is committed under the provisions of this act. Sections 5, 6, 7 and 8 of this law provide for a system of probation, the object of which is to help the child, through a correctional method, by the state placing itself in loco parenti. The treatment of a child contemplated by this law is, as near as may be, that which should be given by his parents. The juvenile courts should, therefore, first exercise the authority conferred by the law, and place the child, where possible, on probation, either with the child's parents, when suitable, or, where there are no such parents, with any other fit person of good moral character, to be supervised by the probation officer, who is required to make frequent reports to the court. This act should be liberally construed in favor of the welfare and best interest of the child; and only for grave offenses, such as affect the general welfare of the public, should a child be proceeded against in accordance with the laws that may be in force governing the commission of crime. *The rights of the child whose welfare is at stake, as well as the rights of his parents, must be duly regarded and protected by the court.*

"The last class of cases referred to supra, for which children may be committed to juvenile institutions, includes all those cases in which the state intervenes in its capacity of parens patriae, and through its officers assumes the care and education of children who are either

without a guardian or place of abode, commonly designated as 'vagrant and destitute minors,' and in some jurisdictions those who are neglected, ill treated, and not properly cared for by their guardians, appointed or natural. In this state, this class are cared for in the Orphans' Home at Pryor Creek.

"Interference or intervention by process of law in matters affecting the care and guardianship of minors is carried on to an extent in the United States that is unknown to many legal systems of other portions of the civilized world. For this reason, it is interesting and instructive to inquire into the precise ground upon which such action rests, and the direction and extent it may properly assume. *The fundamental doctrine upon which governmental intervention in all such cases is based is that the moment a child is born he owes allegiance to the government of the country of his birth, and is entitled to the protection of that government for his person, as well as his property.* In order to discharge this duty of protection, the government, by way of safeguard and for the benefit of the infant, places him under guardianship; but it is only that there may be best secured to him the assistance and protection of law, and that he may acquire that education which will enable him afterwards to discharge the duty which he owes to his country, as well as to himself. *The authority of all guardians is derived from the state;* such guardians being appointed when the occasion for them arises, or is expected to arise. The nature of a guardianship is that of a trust, the execution of which is at all times superintended by the state.

"It has been held by the highest courts of Massachusetts, Ohio, Wisconsin, New York, and others, that the Legislature not only has the power to enact such provisions as those under consideration, but that it is the duty of the state, in its character of parens patriae, to do so. *The performance of such duty is justly regarded as one of the most important governmental functions, and a constitutional limitation must be so understood as not to interfere with its proper and legitimate exercise.*

See Roth v. House of Refuge, supra; Prescott v. State, 19 Ohio St. 184, 2 Am. Rep. 388; Ex parte Nichols, 110 Cal. [651], 653, 43 P. 9. The cases cited do not all discuss the identical question under consideration, but the reasoning applies with full force.

"It is evident that this law was enacted by the Legislature in the interest of the highest principles of humanity, and for the greatest and best interests of the childhood of the state, especially that type of children who need the help and guardianship of the highest power of the state. It is but natural that the jurisdiction in this class of cases should be conferred on the county courts. The statutes already existing at the time of the passage of this law conferred upon the county courts the duty of looking after the property rights of children. In fact, the county court is properly the children's court, and the selection of the judges of these courts is usually had with this in view." [6 Okla. Cr. 495, 120 P. 1027]

This court in the above case cited with approval the cases of Roth v. House of Refuge, 31 Md. 329; and Ex parte Crouse, 4 Whart., Pa., 9. The reasoning in the first case is of particular interest; said the court:

"It is to be remembered that *the public has a paramount interest in the virtue and knowledge of its members, and that of strict right, the business of education belongs to it.* That parents are ordinarily intrusted with it, is because it can seldom be put into better hands; *but where they are incompetent or corrupt, what is there to prevent the public from withdrawing their faculties, held as they obviously are, as its sufferance?* The right of parental control is a natural, but not an unalienable one. It is not excepted by the Declaration of Rights out of the subjects of ordinary legislation, and it consequently remains subject to the ordinary legislative power, which if wantonly or inconveniently used, would soon be constitutionally restricted, but the competency of which, as the government is constituted cannot be doubted. As to abridgment of indefeasible rights by confinement of the person, it is no more than what is borne, to a greater

or less extent, in every school; and we know of no natural right to exemption from restraints which conduce to an infant's welfare. Nor is there a doubt of the propriety of their application in the particular instance. The infant has been snatched from the course which must have ended in confirmed depravity, and not only is the restraint of her person lawful, but it would be an act of extreme cruelty to release her from it."

And see Allison v. Bryan, 21 Okla. 557, 97 P. 282, 286, 18 L.R.A., N.S., 931, 17 Ann. Cas. 468, where it was held:

"A child is primarily a ward of the state. The sovereign has the inherent power to legislate for its welfare, and to place it with either parent at will, or take it from both parents and to place it elsewhere. This is true not only of illegitimate children, but is also true of legitimate children. The rights of the parent in his child are just such rights as the law gives him; no more, no less."

See, also, Egoff v. Board of Children's Guardians, 1908, 170 Ind. 238, 84 N.E. 151; 1 Am. Jur. p. 623, Sec. 41; 39 Am. Jur. p. 602; 60 A.L.R. 1343; and State v. Shorey, 48 Ore. 396, 86 P. 881, 24 L.R.A., N.S., p. 1121; Moppets on the Market, Yale Law Journal, March, 1950, pp. 726-29; and Oklahoma Bar Journal, April 29, 1950, Vol. 21, pp. 605-12.

We conclude in this case that the county court of Stephens county had jurisdiction of the subject matter, jurisdiction of the child's person and authority to pronounce the judgment rendered. The petitioner here, who was served with summons and participated in that case, failed to appeal, and the order entered so far as awarding Serena Avon Walters to the care and custody of respondent is final.

This leaves for consideration the further provision of the order in question giving the respondent in addition

to the custody of Serena Avon Walters until she reaches legal age, the power to consent to the adoption of said child, and which respondent contends may be accomplished without further notice to the natural parents, it being contended that they have already had their day in court and that the primary consideration of the court is the question of what is the best interest of the minor. On the other hand, petitioner contends that portion of the order granting the respondent the right to consent to the adoption of the child is void, and especially so unless petitioner is notified of any adoption proceedings. The statutory provision in question is Tit. 10, O.S.A. § 110, reading:

"In any case where the court shall award a child to the care of any association or individual in accordance with the provisions of this Article, the child shall, unless otherwise ordered, *become a ward, and be subject to the guardianship of the association or individual to whose care it is committed.* Such association or individual shall have authority to place such child in family home with or without indenture, *and may be made party to any proceeding for the legal adoption of a child and may by its, or his attorney or agent, appear in any court where such proceedings are pending and assent to such adoption.* And such assent shall be sufficient to authorize the court to enter the proper order or decrees of adoption. Such guardianship shall not include the guardianship of the estate of the child."

From what we have said before, we deem the above statute constitutional in so far as granting the respondent the right to assent to the adoption of the minor. The question as to whether or not it will be necessary for the natural parents to be notified of any further adoption proceedings involving Serena Avon Walters is not a question properly before the court at this time, for the reason that the order complained of does not provide that

said prospective adoption proceedings may be had without further notice to the petitioners.

The question posed is an interesting one that merits careful study. And from the brief filed by respondent there is a wealth of authority on the subject, from other jurisdictions. The Oklahoma case of Ex parte Parker, 195 Okla. 224, 156 P. 2d 584, is inapplicable to the facts in the within case. It is suggested that the general adoption statute, Tit. 10, O.S.A. §§ 41-56, should be studied in connection with § 110 of the same title, and particularly to be considered is § 44, reading:

"A legitimate child cannot be adopted without the consent of its parents, if living, nor an illegitimate child without the consent of its mother, if living, except that consent is not necessary from a father or mother deprived of civil rights or adjudged guilty of adultery, or of cruelty, and for either cause divorced or adjudged to be an habitual drunkard, or who has been judiciously deprived of the custody of the child, on account of cruelty or neglect."

Consideration no doubt should be given as to whether or not parents deprived of their child on account of inability to provide (which might be only temporary), under § 44 of Tit. 10, O.S.A., may not be in a different position as to notice to them of adoption proceedings, than parents judiciously deprived of custody of child on account of cruelty or neglect.

But anything that we might say on the subject in the within case would constitute dicta and it will be necessary to await a proper case before going further into a question not now correctly within the issues of the instant case.

For the reasons stated, the writ is denied.

JONES, P. J., and BRETT, J., concur.